UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| Larry Wayne Fields, | ) Case No. 08-10278 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| James R. Stout, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 08-2038 |
| | ) |
| Larry Wayne Fields | ) |
| Sharon T. Fields, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This adversary proceeding came before the court on September 21, 2010 for trial. Richard M. Greene appeared for the Plaintiff and James L. Tennant appeared for the Defendants. Having received and considered the evidence offered at the trial and the arguments presented on behalf of the parties, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## NATURE OF PROCEEDING

This adversary proceeding arises out of a conveyance of real property that was owned by the Debtor/Defendant, Larry W. Fields, from Mr. Fields to himself and his wife, Sharon T. Fields ("Mrs. Fields), in order to convert the ownership of the real property

into a tenancy by the entirety. The complaint alleges that such conveyance was intended to hinder, delay or defraud creditors and prays that Mr. Fields be denied a discharge pursuant to section 727(a)(2) of the Bankruptcy Code. The complaint also seeks the avoidance of the transfer as a fraudulent conveyance and relief from the automatic stay in order to pursue a suit pending in the Superior Court of Randolph County by the Plaintiff against Mr. Fields to recover monetary damages from him.

## JURISDICTION

The court has jurisdiction over the objection to discharge claim pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. Such claim is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J) which this court may hear and determine.

## FACTS

Defendant Larry Wayne Fields filed for relief under chapter 7 of the Bankruptcy Code on February 25, 2008. Previously, Mr. Fields worked as a steel erector, but came into bad health, including having heart bypass surgeries in 2003. At the time of his petition, he was unemployed due to health reasons, having ceased working in approximately December of 2006. In addition to having worked as a steel erector, Mr. Fields had been involved in land development ventures in the Randolph County area, some of

which also involved the Plaintiff, James R. Stout. In one transaction involving the two men, Mr. Stout sold a John Deere skid-steer loader and related equipment to Mr. Fields and received an August 28, 2006 promissory note from Mr. Fields in the amount of $28,750.00 as the purchase price for the equipment. When the promissory note was not paid when due, Mr. Stout filed suit against Mr. Fields in Randolph County Superior Court to recover the amount due under the promissory note (the "State Court Action"). The suit was filed on June 14, 2007, and was unresolved and still pending when Mr. Fields filed for bankruptcy relief on February 25, 2008. The State Court Action has been stayed by the automatic stay and remains pending in state court. Also pending in state court is a second proceeding in which Mr. Stout seeks to avoid the October 1, 2007 conveyance as a fraudulent conveyance. That proceeding likewise has been stayed by the automatic stay.

The conveyance that prompted the filing of this proceeding involved a transfer of real property that had been conveyed to Mr. Fields in 2001. The property consisted of a 3.3 acre tract located at 5672 Racine Road in Randleman, North Carolina (the "Racine Road Property"). When the bankruptcy case was filed, the improvements on the Property consisted of a partially complete house and a free-standing garage with an apartment where Mr. and Mrs. Fields resided.

The land was acquired by Mr. Fields on or about July 17, 2001,

by general warranty deed from Mark W. Roberts and Marla J. Roberts. The Roberts are adjoining land owners, and personal friends of the Fields. Desiring to have a horse barn constructed on their land, the Roberts entered into an agreement with the Defendants on March 10, 2000, under which a barn was to be constructed on the Roberts' property as consideration for the 3.3 acre parcel that ultimately was transferred to Mr. Fields in July of 2001 following the completion of a barn on the Roberts' property.

After the Property was deeded to Mr. Fields, a freestanding garage in which to store equipment and supplies was erected on the Property, after which construction of a single family dwelling was begun. However, once Mr. Fields's health began declining, work on the property tapered off. In 2004, the Defendants sold the residence where they had been residing and moved to the Racine Road Property. They resided in an apartment that was constructed in the garage as a temporary residence. Defendants continued work on the residence and were able to complete the exterior of the residence, but the interior remained unfinished when Mr. Fields filed his Chapter 7 bankruptcy case in February of 2008.

As of January 2008, the Randolph County Tax Department evaluated the residence as 50% complete and assigned the acreage, garage and residence a value of $153,680. Although Mr. Fields initially listed the property in his bankruptcy schedules as having a value of $153,680.00, the defendants now assert that this value

is too high, and that $100,000 is a more appropriate figure, but have introduced no evidence beyond their testimony to support the lower value and, as of the date of the trial, the tax value of the property remained at $153,680.

Although the property had been conveyed to Mr. Fields alone and no interest in the property had ever been conveyed to Mrs. Fields, the deed in question provided that the grantors were "LARRY WAYNE FIELDS, individually as a tenant in common, and SHARON T. FIELDS, wife of Larry W. Fields, individually as a tenant in common." The deed provided in the grantee portion of the deed that the transfer was to "LARRY WAYNE FIELDS and wife, SHARON T. FIELDS, for the purpose of creating a tenancy by the entirety pursuant to N.C. Gen. Stat. 39-13.5 et seq." The date portion of the deed was left blank; however, the deed was recorded in the Office of the Register of Deeds of Randolph County on October 1, 2007. This conveyance occurred only three months after the filing of the State Court Action in June of 2007, and just over four months prior to the bankruptcy filing on February 25, 2008. The October 2007 deed was prepared by Marshall F. Dotson III, the attorney who was representing Mr. Fields in the State Court Action.

Mr. Stout contends that the October 1, 2007 transfer of the Racine Road Property was done to hinder, delay or defraud creditors, specifically to thwart collection on any judgment resulting from his State Court Action. Defendants argue that

instead, the transfer was merely to correct an alleged error in the 2001 conveyance of the Property in which Mrs. Fields was omitted from the deed to the Property, and that Mr. Fields's intent was not to harm creditors, but to protect Mrs. Fields and her investment in the property.

ANALYSIS

Pursuant to 11 U.S.C. § 727(a)(2) the court may deny a debtor a discharge if:

> the debtor with, intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed destroyed, mutilated or concealed–
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of filing of the petition.

In order to prevail under this provision, the plaintiff must establish an intent to hinder, delay, or defraud creditors or the estate. Merely showing that property was transferred is not sufficient, as actual intent to hinder, to delay, or to defraud must be shown. See In re Ford, 53 B.R. 444, 449 (W.D. Va. 1984) aff'd, 773 F.2d 52 (4th Cir. 1985); In re Nazarian, 18 B.R. 143, 150 (Bankr. Md. 1982); see also In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985) (constructive fraud alone inadequate to deny discharge). The plaintiff much show such intent by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 289-89

(1991); <u>Farouki v. Emirates Bank Int'l, Ltd.</u>, 14 F.3d 244, (4th Cir. 1994). Because direct evidence of actual intent is rare, courts frequently rely on certain badges of fraud as circumstantial evidence of intent to hinder, delay or defraud under section 727. These badges of fraud include: (1) lack of consideration for the transfer; (2) a family relationship between the parties; (3) some retention of the property for personal use; (4) suspicious financial condition before or after the transfer; (5) the existence of a pattern or series of transactions after the incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (6) suspicious chronology of events and transactions under inquiry. <u>See, e.g.</u>, <u>Village of San Jose v. McWilliams</u>, 284 F.3d 785, 791 (7th Cir. 2002); <u>In re Woodfield</u>, 978 F.2d 516, 518 (9th Cir. 1992); <u>In re Chastant</u>, 873 F.2d 89, 91 (5th Cir. 1989); <u>In re Kaiser</u>, 722 F.2d 1574, 1582-83 (2d Cir. 1983); <u>see also</u> <u>In re Sandoval</u>, No. 96-2391, 1998 WL 497475, at *2 (4th Cir. Aug. 10, 1998) (unpublished) (citing <u>Woodfield</u> and <u>Chastant</u> for indicia of fraud). An attempt to keep the transfer a secret has also been recognized as a seventh badge of fraud. <u>In re Watman</u>, 301 F.3d 3, 8 (1st Cir. 2002). While one factor may be sufficient to find fraudulent intent, several factors together will strongly indicate the presence of fraudulent intent. <u>In re Lightfoot</u>, 152 B.R. 141, 148 (Bankr. S.D. Tex. 1993); <u>In re Penner</u>, 107 B.R. 171, 176 (Bankr. N.D. Ind. 1989).

The existence of a transfer within one year of the bankruptcy filing is not contested in this case. Thus, the only issue to resolve under section 727(a)(2) is whether the transfer was made with intent to hinder, delay, or defraud a creditor. The testimony of Mr. Fields during a Rule 2004 examination and at the trial is strongly indicative of an intent to hinder or delay creditors. In such testimony, Mr. Fields described the transfer as a means of preventing his ex-wife from throwing his current wife off the property in the event of his death. At the time of the transfer, the ex-wife had a claim for domestic support and was a creditor of Mr. Fields. In fact, she was the plaintiff in a state court proceeding seeking to collect domestic support which, if successful, could have led to collection proceedings against the Racine Road Property. However, Mr. Fields has a minor son from his first marriage and it was not clear from his testimony whether the deed instead was intended as a means of preventing his son from inheriting an interest in the property through intestate succession. The minor son's interest as a prospective heir is not one protected by the Bankruptcy Code while, of course, the ex-wife's claim as a creditor of Mr. Fields obviously would implicate section 727(a)(2). Because of this ambiguity, the testimony of Mr. Fields, standing alone, was not regarded as sufficient to establish that he made the transfer in order to hinder, delay or defraud a creditor. Instead, the court also considered the badges of fraud

that were established by the evidence and which confirmed that the conveyance was made with intent to hinder, delay or defraud creditors. The Defendants' attempts to offer innocent explanations regarding the transfer of the Racine Road Property were unpersuasive. Instead, the court finds that the circumstances surrounding the transfer of the Racine Road Property establish an intent on the part of Mr. Fields to hinder, delay or defraud creditors within the meaning of section 727(a)(2) of the Bankruptcy Code.

All of the badges of fraud enumerated in the above-cited cases are present in this proceeding except that the violation of section 727(a)(2) involved a single conveyance rather than a pattern or series of transactions after incurring debt. First, and perhaps most importantly, there was a lack of consideration for Mr. Fields to transfer his interest in the Racine Road Property and thereby convert such interest into a tenancy by the entirety. Consistent with the recitation in the deed that there was no taxable consideration for the transfer, it is undisputed that Mr. Fields received no money or other consideration contemporaneously with the execution and recordation of the deed. The Defendants went to great lengths in attempting to prove that Mrs. Fields had previously contributed money and labor that went into the acquisition and improvement of the Property and argued that such contributions entitled her to an ownership interest in the Property

and constituted consideration to support a transfer to her. However, even if such evidence is accepted as true, the most that can be reasonably concluded from such testimony is that Mrs. Fields would have had a claim to a half interest in the property. The deed from Mr. Fields, however, went much further and was much more prejudicial to creditors than Mr. Fields conveying a half interest in the property to Mrs. Fields while retaining a half interest. Instead, the deed from Mr. Fields conveyed away his entire interest in the Property and placed the Property beyond the reach of his creditors.[1] Thus, while it could be argued that there was consideration for Mr. Fields to transfer a half interest in the Property to Mrs. Fields, there is no basis for finding any consideration for Mr. Fields to convey away his entire interest in the property through the creation of the tenancy by the entireties.

As this proceeding illustrates, the overall financial condition of a debtor before and after a transfer can be instructive regarding the intent with which the transfer was made. Here, at the time of the transfer, Mr. Fields had creditors that

---

[1]Under North Carolina law, the individual creditors of either the husband or wife cannot reach entireties property in order to satisfy a judgment against only one of the spouses. E.g., In re Crouch, 33 B.R. 271, 273 (Bankr. E.D.N.C. 1983); North Carolina Nat'l Bank v. Corbett, 156 S.E.2d 835, 837 (N.C. 1967). Also, the definition of "asset" under section 39-23.1(2) of the North Carolina Uniform Fraudulent Conveyance Act does not include "[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant."

included an ex-wife who was pursuing a court action to collect domestic support from Mr. Fields. Equally, if not more pressing, he had another creditor in the person of Mr. Stout who was aggressively pursuing litigation to collect in excess of $23,000 of indebtedness. Prior to the entireties transfer, Mr. Fields' only asset of real value was the Racine Road Property. The Property had had been valued at $153,680 and was owned in his name alone. As such, the Property was subject to seizure and sale in order to pay the claims of his creditors, including Mr. Stout. The execution and recordation of the tenancy by the entireties deed dramatically altered the landscape for creditors and virtually eliminated their chances of recovering on their claims since the Property was his only asset with realizable value and was placed beyond the reach of creditors by the entireties deed. Such a contrived change in financial condition under the circumstances of this case is strong evidence of an intent on the part of Mr. Fields to hinder, delay or defraud creditors.

The chronology of events in this case also is indicative of fraudulent intent. The entireties transfer occurred less than four months after the State Court Action was filed, and less than two weeks after the initiation of discovery by the attorney for Mr. Stout. This discovery request concerned the details of the financial transactions between Mr. Stout and Mr. Fields and required Mr. Fields to disclose the basis for his denial of

liability to Mr. Stout. The timing of having his defense attorney, Mr. Dotson, prepare a deed conveying away the property on the heels of having received discovery requests in the looming State Court Action is strong circumstantial evidence of an intent to hinder, delay or defraud Mr. Stout as a creditor.

The timing of the entireties transfer also is inconsistent with Defendants' contention that the transaction was justified because of contributions by Mrs. Fields to the acquisition and improvement of the Property. The entireties deed in October of 2007 was executed more than six years after the Racine Road Property was deeded to Mr. Fields. Mrs. Fields had been aware that the Property was held by Mr. Fields alone since January of 2004 when it came to light during a period of marital estrangement involving the Fields. This awareness regarding the status of the title to the Property occurred more than three and a half years prior to the entireties deed in October of 2007. Yet, the ownership of the property remained in Mr. Fields alone throughout the entire period preceding the transfer. Then, only three months after Mr. Stout filed his lawsuit, the entireties deed abruptly was executed and recorded. This chronology strongly suggests that the execution of the entireties deed in October of 2007 reflected an intent to deal with the recent and immediate threat of the Stout lawsuit rather than an intent to deal with a title issue that had existed since 2001.

Concealment of the transfer is another badge of fraud supporting a finding of fraudulent intent in this proceeding. Question 10a on the Statement of Financial Affairs (Official Form 7) requires the bankruptcy debtor to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." This question solicits information on transfers that do not fall into earlier categories that include payments to creditors, lawsuits, foreclosures, assignments, gifts, loses, and bankruptcy payments. The October 2007 conveyance is a transfer of the sort encompassed by question 10a. However, Mr. Fields failed to list this conveyance on his Statement of Financial Affairs filed with his petition on February 25, 2008. Moreover, the deed itself was prepared in a manner apparently intended to obfuscate and misrepresent the nature of the transfer of the Property. At time of the execution of the deed, Mr. Fields was the sole owner of the Property. Mrs. Fields did not own an interest in the Property at that time. Yet, the deed was prepared in a manner that recited that Mrs. Fields held an interest in the property as a tenant in common. The deed also was undated. The Debtor's attempts to obfuscate and conceal the transfer discredit the explanations of the transfer now being offered by the Defendants since there would have been no motive to conceal the transfer had

it been for a legitimate purpose.

The applicability of two additional badges of fraud also has been established in this proceeding. It is undisputed that the transfer was between husband and wife, and so a family relationship was present between transferor and transferee. Additionally, Defendants do not contest that no change occurred with respect to the possession of the property by Mr. Fields following the transfer. He continued to reside on the property and receive the benefits of use following the transfer.

A final point to be addressed is the Defendants' argument that the conveyance to create a tenancy by the entirety was a permissible exercise in pre-bankruptcy exemption planning. The Fourth Circuit's Ford decision squarely addresses this argument. In that case, considering a debtor's argument that transferring property to create a tenancy by the entirety was permissible exemption planing, the court first recognizes that generally "[m]ere conversion of a property from non-exempt to exempt on the eve of bankruptcy-even though the purpose is to shield the asset from creditors-is not enough to show fraud." Ford, 773 F.2d at 54 (citing First Texas Sav. Ass'n v. Reed, 700 F.2d 986, 991 (5th Cir. 1983)). However, the court went on to hold that "if the transfer of property occurs within one year of the bankruptcy filing and there is evidence to indicate a fraudulent purpose aside from the mere conversion of non-exempt property, the claimed exemption is

subject to the fraudulent transfer provision of Section 727." <u>Id.</u> at 55. In that case, the evidence of intent was circumstantial, including the sequence of events. <u>Id.</u> (debtor "had transferred the property to himself and his wife one day after [plaintiff] obtained a judgment . . . conveniently choosing to correct, at that point in time, what was then a six-month old mistake"). Here, fraudulent intent on the part of Mr. Fields has been shown. An assertion of exemption planning does not erase this intent, and will not enable Mr. Fields to avoid consequences under section 727(a)(2).

Accordingly, the court finds that Mr. Fields's October 1, 2007 conveyance of the Racine Road Property in order to create a tenancy by the entireties was done with an intent to hinder, delay or defraud his creditors. As a result, under section 727(a)(2), Mr. Fields is not entitled to a discharge. A separate judgment denying him a discharge will be entered contemporaneously with this memorandum opinion.

The remaining claims in this proceeding are the claim seeking the avoidance of the entireties conveyance as a fraudulent conveyance and the claim requesting relief from the automatic stay in order to pursue the claims against the Fields in state court. This proceeding and the underlying chapter 7 case are in an unusual posture regarding the fraudulent conveyance claim. Such a claim ordinarily would be pursued by the chapter 7 trustee pursuant to either section 548 or section 544 to the extent that state law was

relied upon. In these proceedings, however, the chapter 7 trustee elected not to pursue a fraudulent conveyance claim and sought and obtained authority to abandon the fraudulent conveyance claim and was dismissed as a plaintiff in this proceeding. The Trustee's decision to abandon the fraudulent claim apparently was based on the fact that the bankruptcy case essentially amounts to a two-party dispute between Mr. Fields and Mr. Stout which could be fully litigated by them without the involvement of the trustee. Under the unusual circumstances of this proceeding, the court has elected to abstain from deciding the fraudulent conveyance claim pursuant to 28 U.S.C. § 1334(c)(1) and to lift the automatic stay to permit the parties to proceed with the trial of the suit on the promissory note from Mr. Fields and to litigate whether the October 1, 2007 conveyance was a fraudulent conveyance that should be avoided under applicable North Carolina law.

The fraudulent conveyance claim is a state law claim since it is based upon the North Carolina Uniform Fraudulent Conveyance Act, N.C. Gen. Stat. §§ 39-23.1, et seq. No bankruptcy issues remain in a dispute that involves only Mr. Stout and the Fields and who are the only parties that will be affected by the outcome of the dispute. The claims involving these parties are already at issue in two state court proceedings that are pending before the North Carolina courts and can be effectively and efficiency resolved without further involvement of the bankruptcy court. Abstention

under these circumstances will advance the interest of justice and is appropriate in the interest of comity with the state courts as well as respect for state law.  Accordingly, the judgment in this proceeding will provide for abstention as to the fraudulent conveyance claim and relief from the automatic stay in the manner herein described.

    This 2nd day of December, 2010.

                                               */s/ William L. Stocks*
                                           WILLIAM L. STOCKS
                                           United States Bankruptcy Judge

PARTIES IN INTEREST

Richard M. Greene, Esq.
3200 Northline Avenue, Suite 130
Greensboro, NC 27408

James L. Tennant, Esq.
P.O. Box 4585
Archdale, NC 27263

William P. Miller, Trustee